No. 19-60678

# United States Court of Appeals
## for the
# Fifth Circuit

DENNIS HOPKINS, individually and on behalf of a class of all others similarly situated; HERMAN PARKER, JR., individually and on behalf of a class of all others similarly situated; WALTER WAYNE KUHN, JR., individually and on behalf of a class of all others similarly situated; JON O'NEAL, individually and on behalf of a class of all others similarly situated; EARNEST WILLHITE, individually and on behalf of a class of all others similarly situated; BYRON DEMOND COLEMAN, individually and on behalf of a class of all others similarly situated,

*Plaintiffs-Appellees Cross-Appellants,*

– v. –

SECRETARY OF STATE DELBERT HOSEMANN, in his official capacity,

*Defendant-Appellant Cross-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI, NORTHERN DIVISION
DISTRICT COURT CASE NO. 3:18-CV-188-DPJ-FKB

## MOTION TO CONSOLIDATE, EXPEDITE APPEALS AND SHORTEN BRIEFING SCHEDULE, AND EXPEDITE RULING ON THIS MOTION AND SHORTEN BRIEFING SCHEDULE

PALOMA WU
SOUTHERN POVERTY LAW CENTER
111 East Capitol Street, Suite 280
Jackson, Mississippi 39201
(601) 948-8882
paloma.wu@splcenter.org

LISA GRAYBILL
SOUTHERN POVERTY LAW CENTER
1055 St. Charles Avenue
New Orleans, Louisiana 70130
(504) 486-8982
lisa.graybill@splcenter.org

NANCY G. ABUDU
CAREN E. SHORT
SOUTHERN POVERTY LAW CENTER
P.O. Box 1287
Decatur, Georgia 30031
(404) 521-6700
nancy.abudu@splcenter.org
caren.short@splcenter.org

JONATHAN K. YOUNGWOOD
JANET A. GOCHMAN
ISAAC M. RETHY
NIHARA K. CHOUDHRI
TYLER ANGER
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
(212) 455-2000
jyoungwood@stblaw.com
jgochman@stblaw.com
irethy@stblaw.com
nchoudhri@stblaw.com
tyler.anger@stblaw.com

*Attorneys for Plaintiffs-Appellees Cross-Appellants*

# CERTIFICATE OF INTERESTED PERSONS

## No. 19-60678

---

DENNIS HOPKINS, individually and on behalf of a class of all others similarly situated; HERMAN PARKER, JR., individually and on behalf of a class of all others similarly situated; WALTER WAYNE KUHN, JR., individually and on behalf of a class of all others similarly situated; JON O'NEAL, individually and on behalf of a class of all others similarly situated; EARNEST WILLHITE, individually and on behalf of a class of all others similarly situated; BYROND DEMOND COLEMAN, individually and on behalf of a class of all others similarly situated,

*Plaintiffs-Appellees Cross-Appellants*,

v.

SECRETARY OF STATE DELBERT HOSEMANN, in his official capacity,

*Defendant-Appellant Cross-Appellee*.

---

The undersigned counsel of record certifies that the following interested persons and entities described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

There are no corporations that are either parents of any of the Plaintiffs-Appellees Cross-Appellants or that own 10% or more stock in any of the Plaintiffs-Appellees Cross-Appellants.

i

## A.    Plaintiffs-Appellees Cross-Appellants

Dennis Hopkins
Herman Parker, Jr.
Walter Wayne Kuhn, Jr.
Byron Demond Coleman
Jon O'Neal
Earnest Willhite
c/o Southern Poverty Law Center
111 East Capitol Street, Suite 280
Jackson, MS 39201
Tel: (601) 948-8882
Paloma.Wu@splcenter.org

The foregoing individuals are the named plaintiffs in *Hopkins, et al. v. Hosemann*.

They seek to represent the following class, which was certified by the District

Court:

> Any person who (a) is or becomes disenfranchised under
> Mississippi state law by reason of a conviction of a
> disenfranchising offense, and (b) has completed the term
> of incarceration, supervised release, parole, and/or
> probation for each such conviction.

Dkt. 89, Order, *Harness, et al. v. Hosemann*, No. 3:17-cv-00791-DPJ-FKB (S.D.

Miss. Feb. 13, 2019), at 6.

**B.**     **Current and Former Attorneys for Plaintiffs-Appellees Cross-Appellants**

<u>Current Attorneys</u>

Jonathan K. Youngwood
Janet A. Gochman
Isaac Rethy
Nihara K. Choudhri
Tyler Anger
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Tel: (212) 455-3539
jyoungwood@stblaw.com
jgochman@stblaw.com
irethy@stblaw.com
nchoudhri@stblaw.com
tyler.anger@stblaw.com

Paloma Wu
SOUTHERN POVERTY LAW CENTER
111 East Capitol Street, Suite 280
Jackson, MS 39201
Tel: (601) 948-8882
Paloma.Wu@splcenter.org

Lisa Graybill
SOUTHERN POVERTY LAW CENTER
1055 St. Charles Avenue
New Orleans, LA 70130
Tel: (504) 486-8982
Lisa.Graybill@splcenter.org

Nancy G. Abudu
Caren E. Short
SOUTHERN POVERTY LAW CENTER
P.O. Box 1287
Decatur, GA 30031
Tel: (404) 521-6700
Nancy.Abudu@splcenter.org
Caren.Short@splcenter.org

Former Attorneys

Jody E. Owens, II
SOUTHERN POVERTY LAW CENTER
111 East Capitol Street, Suite 280
Jackson, MS 39201
Tel: (601) 948-8882
Jody.Owens@splcenter.org

## C.    Defendant-Appellant Cross-Appellee

Delbert Hosemann, Secretary of State of Mississippi, in his official capacity

## D.    Current and Former Attorneys for Defendant-Appellant Cross-Appellee

Current Attorneys:

Krissy C. Nobile
Justin L. Matheny
OFFICE OF THE ATTORNEY GENERAL OF THE STATE OF MISSISSIPPI
P. O. Box 220
Jackson, MS 39205
Tel: (601) 359-3680
knobi@ago.state.ms.us
jmath@ago.state.ms.us

Former Attorneys:

None.

**E.**    **Other Interested Persons**

None.


Dated:        September 16, 2019

> s/ Jonathan K. Youngwood
> Jonathan K. Youngwood
> SIMPSON THACHER & BARTLETT LLP
> 425 Lexington Avenue
> New York, NY 10017
> Tel: (212) 455-3539
> jyoungwood@stblaw.com
>
>
> *Attorney of record for Plaintiffs-Appellees*
> *Cross-Appellants*

# **TABLE OF CONTENTS**

Pages

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

TABLE OF AUTHORITIES ................................................................................ vii

INTRODUCTION ............................................................................................... 1

PROCEDURAL HISTORY .................................................................................. 3

ARGUMENT ...................................................................................................... 5

I.  This Appeal Should Be Consolidated with *Hopkins et al. v. Hosemann*, No. 19-60662 ................................................................... 5

II. There Is Good Cause to Expedite Both of the *Hopkins* Appeals ................. 6

III. This Court Should Order a Shortened Briefing Schedule for the *Hopkins* Appeals and Set the Earliest Possible Date for Oral Argument ........................................................................................... 9

IV. This Court Should Set a Shortened Briefing Schedule and Expedite Ruling on This Motion ................................................................. 11

CONCLUSION ................................................................................................. 12

CERTIFICATE OF CONFERENCE ..................................................................... 14

CERTIFICATE OF SERVICE ............................................................................. 15

CERTIFICATE OF COMPLIANCE ..................................................................... 16

# TABLE OF AUTHORITIES

**Cases**                                                            **Page(s)**

*Bansal v. Consulate General of India Houston,*
   99 F. App'x 535 (5th Cir. 2004) ...............................................................6

*Democratic Nat'l Committee v. Reagan,*
   904 F.3d 686 (9th Cir. 2018), *reh'g en banc granted,* 911 F.3d 942 (9th
   Cir. 2019) ...............................................................................................9

*In re Deepwater Horizon,*
   546 F. App'x 502 (5th Cir. 2013) ..........................................................6

*Kirksey v. City of Jackson, Mississippi,*
   625 F.2d 21 (5th Cir. 1980) ....................................................................8

*League of Women Voters of North Carolina v. North Carolina,*
   769 F.3d 224 (4th Cir. 2016) ...............................................................7–8

*League of Women Voters of United States v. Newby,*
   838 F.3d 1 (D.C. Cir. 2016) .................................................................8–9

*Louisiana Generating L.L.C. v. Illinois Union Ins. Co.,*
   719 F.3d 328 (5th Cir. 2013) ..................................................................6

*Matter of Estate Fernandez,*
   123 F.3d 241 (5th Cir. 1997), *amended by* 130 F.3d 1138 (5th Cir. 1997)...........6

*Page v. Bartels,*
   248 F.3d 175 (3d Cir. 2001) ...................................................................9

*Pilcher v. Rains,*
   853 F.2d 334 (5th Cir. 1988) ..................................................................8

*Thomas v. Bryant,*
   No. 19-60133 (5th Cir. Apr. 16, 2019) ........................................... 8, 11

**Statutes**

28 U.S.C. § 1657(a) ........................................................................ 1, 6–7

**Rules**

Fed. R. App. 2 ............................................................................. 1, 11–12

Fed. R. App. 3(b)(2)..........................................................................6

Fed. R. App. P. 31(a)(2) ................................................................ 1, 10

Fifth Circuit Rules 27.5.................................................................. 1–2, 6

Fifth Circuit Rules 34.5.............................................................. 1–2, 6, 10

Plaintiffs-Appellees Cross-Appellants Dennis Hopkins, Herman Parker, Jr.,

Walter Wayne Kuhn, Jr., Byron Demond Coleman, Jon O'Neal and Earnest

Willhite, individually and on behalf of all others similarly situated ("Plaintiffs-

Appellees") respectfully move the Court to: (i) consolidate this appeal with the

appeal filed by the Mississippi Secretary of State ("Defendant-Appellant") in

*Hopkins, et al v. Hosemann*, No. 19-60662; (ii) expedite both appeals for good

cause pursuant to Fifth Circuit Rules 27.5 and 34.5 and 28 U.S.C. § 1657(a);

(iii) order the shortened briefing schedule proposed by Plaintiffs-Appellees and set

the earliest possible date for oral argument pursuant to Federal Rule of Appellate

Procedure 31(a)(2) and Fifth Circuit Rule 34.5; and (iv) set a shortened briefing

schedule and expedite ruling on this Motion pursuant to Federal Rule of Appellate

Procedure 2.

## INTRODUCTION

This appeal concerns the constitutionality of Mississippi's lifetime voting

ban imposed as a punishment for individuals convicted of certain disenfranchising

offenses pursuant to Section 241 of the Mississippi Constitution; and the arbitrary

and discriminatory legislative process for the restoration of voting rights to

disenfranchised individuals established in Section 253 of the Mississippi

Constitution ("Section 253"). Plaintiffs-Appellees—representing a certified class

of tens of thousands of citizens of the state of Mississippi who have been permanently stripped of the right to vote—have asserted claims under the First, Eighth and Fourteenth Amendments.

Because of the significance of the constitutional rights at issue, Plaintiffs-Appellees have litigated this case as expeditiously as practically possible. A week after the first scheduling conference in this case, Plaintiffs-Appellees moved for class certification. Less than two months later, Plaintiffs-Appellees and Defendant-Appellant cross-moved for summary judgment. Briefing on summary judgment was concluded in less than six weeks.

There is good cause to expedite these appeals under Fifth Circuit Rules 27.5 and 34.5. Next year is the election for the President of the United States, as well as statewide Mississippi elections for the United States Senate, United States Congress and Justices of the Mississippi Supreme Court. Primaries for these elections will be held in Mississippi on March 10, 2020, and the deadline to register to vote is February 10, 2020. With a registration deadline less than five months away, unless this appeal is expeditiously heard, Plaintiffs-Appellees will suffer irreparable harm as they will be denied the right to vote in these important elections.

## PROCEDURAL HISTORY

Plaintiffs-Appellees filed their Class Action Complaint on March 27, 2018. Thereafter, on June 28, 2018, this case was consolidated with *Harness et al. v. Hosemann*, No. 3:17-cv-00791-DPJ-FKB ("*Harness*"), pending before the Honorable Daniel P. Jordan III, on the grounds that *Hopkins* and *Harness* both concern constitutional challenges to Mississippi's criminal disenfranchisement provision. [Dkt. No. 34.][1]

The first scheduling conference in *Hopkins* took place on August 7, 2018. On July 21, 2018, two weeks before this scheduling conference, Plaintiffs-Appellees provided Defendant-Appellant with courtesy copies of Plaintiffs-Appellees' discovery requests. On August 1, 2018, almost a week before the scheduling conference, Plaintiffs-Appellees provided Defendant-Appellant with courtesy copies of Plaintiffs-Appellees' two expert reports.

On August 15, 2018, Plaintiffs-Appellees moved for class certification and on October 4, 2018, the parties cross-moved for summary judgment, with briefing completed on November 8, 2018. [Dkt. Nos. 44–45, 65–73, 77–80, 85–86.] On February 13, 2019, the District Court granted Plaintiffs-Appellees' Motion for Class Certification, certifying a class defined as follows:

---

[1] Record citations to "Dkt." refer to the docket in *Harness et al. v. Hosemann*, No. 3:17-cv-00791-DPJ-FKB.

3

> Any person who (a) is or becomes disenfranchised under
> Mississippi state law by reason of a conviction of a
> disenfranchising offense, and (b) has completed the term
> of incarceration, supervised release, parole, and/or
> probation for each such conviction.

February 13, 2019 Order [Dkt. No. 89] at 6.

On August 7, 2019, the District Court denied Plaintiffs-Appellees' Motion for Summary Judgment in its entirety, and granted Defendant-Appellant's Motion for Summary Judgment as to all claims except for Plaintiffs-Appellees' race-based equal protection challenge to Section 253. Aug. 7, 2019 Order [Dkt. No. 91]. The District Court also granted summary judgment to Defendant-Appellant on all claims in *Harness*, and severed and dismissed the *Harness* complaint. *Id.* The District Court "certifie[d] all holdings" in *Hopkins* for immediate interlocutory appeal pursuant to 28 U.S.C. § 1292(b), but did not specifically formulate the relevant controlling questions of law. *Id.* at 28–29 (explaining that it certified all issues because, *inter alia*, it "wishes to avoid piecemeal appeals.").

On August 19, 2019, the parties cross-petitioned for permission to appeal from the District Court's August 7, 2019 Order pursuant to 28 U.S.C. § 1292(b). Separately, on September 3, 2019, Defendant-Appellant noticed an appeal from the August 7, 2019 Order with respect to "the denial of Secretary Hosemann's claim of Eleventh Amendment immunity" pursuant to the collateral order doctrine. Defendant-Appellant's Notice of Appeal, attached hereto as Exhibit B, at 1. That

4

appeal was docketed as *Hopkins et al. v. Hosemann*, No. 19-60662. Defendant-Appellant's Notice of Appeal states that in the event this Court grants permission to appeal from the August 7, 2019 Order pursuant to 28 U.S.C. § 1292(b), that appeal "should be consolidated and merged with" Defendant-Appellant's appeal from the August 7, 2019 Order pursuant to the collateral order doctrine. Ex. B at 1. Accordingly, Defendant does not oppose the consolidation of *Hopkins et al. v. Hosemann*, No. 19-60662 with this appeal. On September 11, 2019, this Court granted the parties permission to appeal from the August 7, 2019 Order pursuant to 28 U.S.C. § 1292(b).

## ARGUMENT

### I.    This Appeal Should Be Consolidated with *Hopkins et al. v. Hosemann*, No. 19-60662

As an initial matter, this Court should grant Plaintiffs-Appellees' unopposed motion to consolidate the instant appeal with the appeal in *Hopkins et al. v Hosemann*, No. 19-60662 (together, the "*Hopkins* appeals"). Both of the *Hopkins* appeals concern the same legal question, namely, whether the District Court properly held that the *Ex parte Young* exception to Eleventh Amendment immunity applies with respect to Plaintiffs-Appellees' claims against Defendant-Appellant concerning Section 253. Both appeals arise from the August 7, 2019 Order in connection with the same litigation, and the appeals involve the same record.

Consolidation of these duplicative appeals is therefore warranted here. *See,*

5

*e.g.*, *Louisiana Generating L.L.C. v. Illinois Union Ins. Co.*, 719 F.3d 328, 332 n.2 (5th Cir. 2013) (noting that this Court consolidated a permissive appeal pursuant to 28 U.S.C. § 1292(b) with other appeals arising from the same district court orders resulting from the parties' pursuit of multiple "avenues of appeal"); *Bansal v. Consulate General of India Houston*, 99 F. App'x 535, 537 (5th Cir. 2004) (granting a motion to consolidate appeals "[b]ecause those appeals share a common record"); *see also In re Deepwater Horizon*, 546 F. App'x 502, 505 (5th Cir. 2013) (noting that this Court granted defendant's motion to consolidate two appeals by the same intervenor "[d]ue to the interrelatedness" of those appeals); *Matter of Estate Fernandez*, 123 F.3d 241, 243 (5th Cir. 1997) (noting that this Court consolidated two appeals "which raise[d] the same jurisdictional question"), *amended by* 130 F.3d 1138 (5th Cir. 1997); Fed. R. App. P. 3(b)(2) ("When the parties have filed separate timely notices of appeal, the appeals may be joined or consolidated by the court of appeals.").

## II.    There Is Good Cause to Expedite Both of the *Hopkins* Appeals

Pursuant to Fifth Circuit Rules 27.5 and 34.5, this Court may grant motions to expedite appeals "for good cause." 28 U.S.C. § 1657(a) similarly provides that a court "shall expedite the consideration of" certain enumerated categories of actions, as well as "any other action if good cause therefor is shown." 28 U.S.C. § 1657(a) states that "'good cause' is shown if a right under the Constitution of the

6

United States or a Federal Statute . . . would be maintained in a factual context that indicates that a request for expedited consideration has merit."

Good cause exists to expedite both of the *Hopkins* appeals because there are elections of nationwide and statewide significance next year. In addition to the presidential election, elections will also be held in Mississippi on November 3, 2020 for one seat in the United States Senate, all four of Mississippi's seats in the United States Congress, and four Justices of the Mississippi Supreme Court, among other elected offices. The primaries for the November 3, 2020 elections will be held on March 10, 2020. *See* Mississippi Voter Information Guide, attached hereto as Exhibit C, at 2. The last day to register to vote in the March 10, 2020 primaries is February 10, 2020, less than five months from today. *See id.* In the event this Court rules in Plaintiffs-Appellees' favor in whole or in part, an expedited resolution of the *Hopkins* appeals will allow the time necessary for Plaintiffs-Appellees and the thousands of class members they represent to register to vote by February 10, 2020 and vote in the March 10, 2020 primaries, as well as in the November 3, 2020 elections. If the *Hopkins* appeals are not expedited, this Court's ruling will almost certainly be too late for Plaintiffs-Appellees and the class members to participate in these significant elections. *See League of Women Voters of North Carolina v. North Carolina*, 769 F.3d 224, 235, 247 (4th Cir. 2016) (recognizing that "once the election occurs, there can be no do over and no

redress").

This Court has granted motions to expedite appeals involving constitutional or federal statutory challenges to election laws and policies. *See, e.g.*, *Thomas v. Bryant*,  No. 19-60133 (5th Cir. Apr. 16, 2019) (granting a motion to expedite appeal by the Governor of Mississippi and the Mississippi Secretary of State in a successful Voting Rights Act challenge to the legislative boundaries of a Mississippi State Senate District), attached hereto as Exhibit D; *Pilcher v. Rains*, 853 F.2d 334, 336 (5th Cir. 1988) (noting that "[t]his Court granted an expedited appeal" in a constitutional challenge to a Texas Election Code provision requiring that minor-party ballot access petitions include voter registration numbers).

As this Court and other appellate courts have recognized, the expedition of appeals involving challenges to election laws is particularly appropriate when, like here, there is an upcoming election. In *Kirksey v. City of Jackson, Mississippi*, this Court instructed that the parties would be "entitled to an expedited appeal" following remand in a constitutional challenge to the "at-large" system for electing the mayor and two city commissioners for the City of Jackson because of "the importance of [the] case and its urgency in terms of the 1981 City of Jackson municipal elections." 625 F.2d 21, 22 & n.2 (5th Cir. 1980). Similarly, in *League of Women Voters of United States v. Newby*, the D.C. Circuit reviewed on an expedited basis the denial of a preliminary injunction in a case challenging the

8

modification of the state-specific instructions on the National Mail Voter

Registration Form to require proof of United States citizenship to register to vote in

Kansas, Georgia and Alabama. 838 F.3d 1, 5–6 (D.C. Cir. 2016). The D.C. Circuit

explained its rationale for expediting the appeal as follows:

> [T]his court granted expedition precisely because if
> appellants prevailed, then there would exist a hard
> deadline for meaningful injunctive relief. A fundamental
> constitutional issue is at stake and time is of the essence.
> The November 8 elections loom, and the registration
> cutoff for using the federal registration form comes well
> before that: 21 days before in Kansas; 30 days before in
> Georgia; and 15 days before in Alabama.

*Id.* at 7. *See also, e.g.*, *Democratic Nat'l Committee v. Reagan*, 904 F.3d 686, 701

(9th Cir. 2018) (noting that the court "granted [plaintiff's] motion to expedite the

appeal" in a constitutional challenge to certain Arizona election laws "in light of

the upcoming 2018 election"), *reh'g en banc granted*, 911 F.3d 942 (9th Cir.

2019); *Page v. Bartels*, 248 F.3d 175, 184 (3d Cir. 2001) (noting that "[i]n light of

New Jersey's impending legislative elections," the court "agreed to hear [the]

appeal" in a constitutional challenge to New Jersey's state legislative

reapportionment plan "on an expedited basis").

## III. This Court Should Order a Shortened Briefing Schedule for the *Hopkins* Appeals and Set the Earliest Possible Date for Oral Argument

Plaintiffs-Appellees respectfully submit that this Court should order a

shortened briefing schedule in the *Hopkins* appeals; and set a date for oral

argument that will enable the Court to consider and rule on both appeals before February 10, 2020—the last day to register to vote for the March 10, 2020 primaries in Mississippi. *See* Fed. R. App. P. 31(a)(2) (providing that a court "may shorten the time to serve and file briefs, either by local rule or by order in a particular case"); 5th Cir. R. 34.5 (providing that the Court may "for good cause on motion of either party, advance any case for hearing, and prescribe an abbreviated briefing schedule").

Plaintiffs-Appellees respectfully request that this Court order the following shortened schedule for consolidated briefing in the *Hopkins* appeals: Defendant-Appellant's principal brief is due on October 7, 2019; Plaintiffs-Appellees' principal and response brief is due on October 21, 2019; Defendant-Appellant's response and reply brief is due on November 4, 2019; and Plaintiffs-Appellees' reply brief is due on November 18, 2019.

To afford Defendant-Appellant adequate time to prepare briefing, Plaintiffs-Appellees have offered to join in a motion to re-designate the parties, such that Defendant-Appellant would be designated as the Appellee Cross-Appellant and Plaintiffs-Appellees would be designated as the Appellants Cross-Appellees. If the Court were to re-designate the parties, Defendant-Appellant's first brief would not be due until October 21, 2019 under the proposed shortened briefing schedule. This is just two days earlier than the current due date for Defendant-Appellant's

principal brief in *Hopkins et al. v. Hosemann*, No. 19-60662.[2] Defendant-Appellant

would have nearly the same amount of time  under the proposed shortened briefing

schedule if the Court were to re-designate the parties. Nonetheless, Defendant-

Appellant has rejected Plaintiffs-Appellees' offer to file a joint motion to re-

designate the parties, and opposes the expedition of the *Hopkins* appeals, including

the shortened briefing schedule.

Plaintiffs-Appellees also respectfully ask this to Court schedule these

appeals for the earliest possible date for oral argument following the completion of

briefing. Specifically, Plaintiffs-Appellees request oral argument during the week

of December 2, 2019.[3]

## IV.    This Court Should Set a Shortened Briefing Schedule and Expedite Ruling on This Motion

Plaintiffs-Appellees respectfully ask this Court to set a shortened briefing

schedule for this Motion. *See* Fed. R. App. P. 2 (providing that "[o]n . . . a party's

---

[2] On September 13, 2019, a briefing notice was issued in *Hopkins et al. v. Hosemann*, No. 19-60662. Defendant-Appellant's brief in that appeal is presently due on October 23, 2019; Plaintiffs-Appellees' response is due on November 22, 2019; and Defendant-Appellant's reply is due on December 13, 2019.

[3] This Court set a similarly shortened briefing schedule and scheduled the earliest possible date for oral argument date in another election law-related appeal. *See* Ex. D, *Thomas v. Bryant*, No. 19-60133 (5th Cir. Apr. 16, 2019) (ordering that appellants' brief was due on April 18, 2019, appellee's brief was due on May 6, 2019, and appellants' reply was due on May 13, 2019; and scheduling oral argument for the week of June 10, 2019).

11

motion, a court of appeals may—to expedite its decision . . . suspend any provision of these rules in a particular case and order proceedings as it directs . . .”). Specifically, Plaintiffs-Appellees ask that this Court require Defendant-Appellant to file a response by September 18, 2019; and Plaintiffs-Appellees to file a reply by September 19, 2019. This proposed shortened briefing schedule will not prejudice Defendant-Appellant, as this Motion is straightforward and does not require an extensive response.

Plaintiffs-Appellees also respectfully ask this Court to expedite ruling on this Motion. In the event the Court rules in Plaintiffs-Appellees' favor, an expedited ruling on this Motion will enable both parties to comply with the shortened briefing schedule for the *Hopkins* appeals and prepare for oral argument.

## CONCLUSION

For the foregoing reasons, Plaintiffs-Appellees request that this Court: (i) grant the unopposed motion to consolidate this appeal with *Hopkins, et al v. Hosemann*, No. 19-60662; (ii) expedite both of the *Hopkins* appeals for good cause; (iii) order the shortened briefing schedule proposed by Plaintiffs-Appellees, and set the earliest possible date for oral argument; and (iv) set a shortened briefing schedule and expedite ruling on this Motion.

Dated: September 16, 2019

By:   /s/  Jonathan K. Youngwood

SOUTHERN POVERTY LAW CENTER
Paloma Wu
111 East Capitol Street, Suite 280
Jackson, MS 39201
Tel: (601) 948-8882
Paloma.Wu@splcenter.org

Lisa Graybill
1055 St. Charles Avenue
New Orleans, LA 70130
Tel: (504) 486-8982
Lisa.Graybill@splcenter.org

Nancy G. Abudu
Caren E. Short
P.O. Box 1287
Decatur, GA 30031
Tel: (404) 521-6700
Nancy.Abudu@splcenter.org
Caren.Short@splcenter.org

SIMPSON THACHER & BARTLETT LLP
Jonathan K. Youngwood
Janet A. Gochman
Isaac M. Rethy
Nihara K. Choudhri
Tyler Anger
425 Lexington Avenue
New York, NY 10017
Tel: (212) 455-2000
jyoungwood@stblaw.com
jgochman@stblaw.com
nchoudhri@stblaw.com
irethy@stblaw.com
tyler.anger@stblaw.com

*Attorneys for Plaintiffs-Appellees*
*Cross-Appellants*

# CERTIFICATE OF CONFERENCE

I hereby certify that, pursuant to Fifth Circuit Rule 27.4, counsel for Plaintiffs-Appellees Cross-Appellants conferred with opposing counsel for Defendant-Appellant Cross-Appellee concerning this Motion. Undersigned counsel was advised that Defendant-Appellant Cross-Appellee does not oppose consolidation of the *Hopkins* appeals. Undersigned counsel was further advised that Defendant-Appellant Cross-Appellee opposes expedition of the *Hopkins* appeals; and opposes a shortened briefing schedule for this Motion.

Dated:        September 16, 2019

s/ Jonathan K. Youngwood
Jonathan K. Youngwood
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Tel: (212) 455-3539
jyoungwood@stblaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2019, an electronic copy of the

foregoing Motion was filed with the Clerk of Court for the United States Court of

Appeals for the Fifth Circuit using the appellate CM/ECF system, and service was

accomplished on the following parties via email:

Krissy C. Nobile
Justin L. Matheny
OFFICE OF THE ATTORNEY GENERAL OF THE STATE OF MISSISSIPPI
P. O. Box 220
Jackson, MS 39205
Tel: (601) 359-3680
knobi@ago.state.ms.us
jmath@ago.state.ms.us

*Counsel for Defendant-Appellant Cross-Appellee Delbert Hosemann, Mississippi*
*Secretary of State, in his official capacity*

Dated:        September 16, 2019

s/ Jonathan K. Youngwood
Jonathan K. Youngwood
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Phone: (212) 455-3539
Fax: (212) 455-2502
jyoungwood@stblaw.com

## CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that this Motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the parts of the Motion exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2, it contains 2,719 words.

Undersigned counsel certifies that this Motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Fifth Circuit Rule 32.1 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this Motion has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman.

Dated:        September 16, 2019

> s/ Jonathan K. Youngwood
> Jonathan K. Youngwood
> SIMPSON THACHER & BARTLETT LLP
> 425 Lexington Avenue
> New York, NY 10017
> Tel: (212) 455-3539
> jyoungwood@stblaw.com

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ROY HARNESS, ET AL.                                                    PLAINTIFFS

V.                                        CIVIL ACTION NO. 3:17-CV-791-DPJ-FKB

DELBERT HOSEMANN, SECRETARY OF STATE
OF MISSISSIPPI                                                         DEFENDANT

CONSOLIDATED WITH

DENNIS HOPKINS, ET AL.                                                 PLAINTIFFS

V.                                        CIVIL ACTION NO. 3:18-CV-188-DPJ-FKB

DELBERT HOSEMANN, SECRETARY OF STATE
OF MISSISSIPPI                                                         DEFENDANT

ORDER

Plaintiffs seek an order restoring the voting rights of convicted felons in Mississippi. The

parties have all moved for summary judgment, contending that there are no disputed facts. [63,

65, 66, 74]. As discussed more fully below, both the United States Supreme Court and the Fifth

Circuit Court of Appeals have rejected Plaintiffs' pivotal legal arguments as to article XII,

section 241 of the Mississippi Constitution. While those courts may be free to reassess their

prior rulings, the precedent is binding at the district-court level. For that and other reasons,

Plaintiffs' motions [65, 74] are denied and Defendant's motions [63, 66] are granted as to

disenfranchisement under section 241. As to section 253, which restores the right to vote, the

Court finds the relevant motions [65, 66] should be denied.

I.      Facts and Procedural History

Two groups of convicted felons filed separate suits seeking to regain the right to vote. The lead plaintiffs in those cases were Roy Harness and Dennis Hopkins. The Court consolidated the cases on June 28, 2018, and then certified a class action on February 26, 2019.

Plaintiffs challenge two sections of article XII of the Mississippi Constitution—sections 241 and 253. Section 241 provides that individuals who have been "convicted of murder, rape, bribery, theft, arson, obtaining money or goods under false pretense, perjury, forgery, embezzlement[,] or bigamy" are ineligible to vote. And section 253 allows the legislature to restore an individual's suffrage by "a two-thirds vote of both houses, of all members elected."

The Harness Plaintiffs focus their complaint on section 241, arguing that it violates the Fourteenth and Fifteenth Amendments because the disenfranchising crimes that remain from the section's 1890 version were adopted to suppress black voters. Harness Am. Compl. [19] at 19–20. They seek declaratory relief enjoining Secretary of State Delbert Hosemann from taking any steps that would prevent voting by Mississippians convicted of bribery, theft, arson, obtaining money or goods under false pretense, perjury, forgery, embezzlement, and bigamy. *Id.* at 21.[1]

The Hopkins Plaintiffs challenge both sections 241 and 253 and take a different approach. They say lifetime disenfranchisement (section 241) violates the Eighth Amendment's prohibition against cruel and unusual punishment and exceeds § 2 of the Fourteenth Amendment, which allows states to merely "abridge" a felon's voting rights. Hopkins Compl. [1] at 4–5 (filed in 3:18-CV-188-DPJ-FKB). As to section 253 (the restoration provision), the Hopkins Plaintiffs

---

[1] The Harness Plaintiffs do not challenge disqualification based on murder and rape convictions. *Id.* at 2.

2

argue that it violates both the First Amendment, by hampering political expression, and the Equal

Protection Clause, because it is arbitrary and was enacted with discriminatory intent.  *Id.*

II.     Summary Judgment Standard

        Each party seeks summary judgment.  That relief is warranted under Federal Rule of

Civil Procedure 56(a) when evidence reveals no genuine dispute regarding any material fact and

that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of

summary judgment, after adequate time for discovery and upon motion, against a party who fails

to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986).

        The party moving for summary judgment "bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of [the record] which it

believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  The

nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing

that there is a genuine issue for trial.'"  *Id.* at 324 (citation omitted).  In reviewing the evidence,

factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both

parties have submitted evidence of contradictory facts."  *Little v. Liquid Air Corp.*, 37 F.3d 1069,

1075 (5th Cir. 1994) (en banc).  When such contradictory facts exist, the court may "not make

credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*,

530 U.S. 133, 150 (2000).  Conclusory allegations, speculation, unsubstantiated assertions, and

legalistic arguments have never constituted an adequate substitute for specific facts showing a

genuine issue for trial.  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir.

2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

III.    Article III Standing and Eleventh Amendment Immunity

In his motions for summary judgment, Hosemann first raises concerns over Article III

standing and Eleventh Amendment immunity.  Under both approaches, Hosemann questions his

connection to sections 241 and 253.  As to section 241, he insists that local election officials

have the duty and authority to register, refuse, and purge voters.  And as to section 253, he

maintains that only the legislature can act to restore voting rights. [2]

A.    Legal Standards

To establish an Article III case or controversy, Plaintiffs must show:  (1) they have

suffered an "injury in fact," (2) there is a "causal connection between the injury and the conduct

complained of," and (3) "the injury will be 'redressed by a favorable decision.'"  *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (quoting *Simon v. E. Ky. Welfare Rights*

*Org.*, 426 U.S. 26, 38 (1976)).  "The party invoking federal jurisdiction bears the burden of

establishing these elements."  *Id.* at 561.  Hosemann concedes that Plaintiffs meet the first

element but says they cannot establish a causal connection or redressability.  *See Rivera v.*

*Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002) (noting that a failure to establish any one

element deprives the court of jurisdiction).

In addition, Hosemann asserts Eleventh Amendment immunity and argues that the *Ex*

*parte Young* exception is inapplicable.  209 U.S. 123 (1908).  Under *Ex parte Young*, a state

officer can be sued in federal court despite the Eleventh Amendment, if that officer has "'some

connection with the enforcement of the act' in question or [is] 'specially charged with the duty to

---

[2] While Article III standing and Eleventh Amendment immunity are distinct concepts, there is
significant overlap.  *See* Hopkins Resp. Mem. [78] at 20–21 (citing *Air Evac EMS, Inc. v. Tex.,*
*Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 520 (5th Cir. 2017)); *see also* Def.'s
Rebuttal [86] at 5 (stating "plaintiff's [s]ection 241 claims against the Secretary fail under Article
III and/or the Eleventh Amendment").

enforce the statute' and [is] threatening to exercise that duty." *Okpalobi v. Foster*, 244 F.3d 405, 414–15 (5th Cir. 2001) (quoting *Ex parte Young*, 209 U.S. at 157, 158). With these standards in mind, the Court considers sections 241 and 253 separately.

B.     Section 241

Hosemann says he does not enforce section 241, does not investigate or prosecute violations of election laws, does not supervise local election officials, lacks the authority to prohibit felons from registering to vote, and has no duty to remove felons from the voter rolls. Def.'s Mem. [64] at 6. But Plaintiffs argue that Hosemann's responsibilities under state law— particularly the administration of the computerized Statewide Elections Management System ("SEMS")—and his designation as the state's chief election officer under the National Voter Registration Act of 1993 ("NVRA") provide enough basis for Article III standing and trigger the *Ex parte Young* exception to Eleventh Amendment immunity.

Under state statute, "[t]he circuit clerk of each county is authorized and directed to prepare and keep in his or her office a full and complete list . . . of persons convicted of voter fraud or of any crime listed in Section 241, Mississippi Constitution of 1890." Miss. Code § 23-15-151. But the statute goes on to provide that a list of persons convicted of a disenfranchising crime "shall also be entered into [SEMS] on a quarterly basis." *Id.* SEMS is maintained by the Secretary of State and is considered "the official record of registered voters in every county of the state." *Id.* § 23-15-165(1).

Hosemann explains that "the Administrative Office of Courts provides data regarding criminal convictions which is filtered to only include individuals with a conviction of a disenfranchising crime before being loaded into [SEMS]." Hosemann Resp. to Hopkins Interrogs. [63-1] at 44. Then SEMS "provides potential match reporting regarding individuals

convicted of a disenfranchising crime and county election officials are trained to only take action

upon review of a final sentencing order entered by a court." *Id.* at 49.  That training is provided

by Hosemann.  *See id.* at 48 ("The Secretary of State provides training annually to county

election commissioners regarding voter roll maintenance in accordance with Mississippi law and

the National Voter Registration Act."); *see also* Miss. Code § 23-15-211(4) (stating Hosemann is

responsible for conducting and sponsoring an "elections seminar" attended by county election

commissioners).  In other words, Hosemann receives information regarding disenfranchising

convictions, adds that information to SEMS, and trains county officials on the next step.

In addition, Hosemann is Mississippi's "chief election officer" for purposes of the

NVRA, Miss. Code § 23-15-211.1(1), and has "the power and duty to gather sufficient

information concerning voting in elections in this state," *id.* § 23-15-211.1(2); *see also* 52 U.S.C.

§ 20509 ("Each State shall designate a State officer or employee as the chief State election

official to be responsible for coordination of State responsibilities under this chapter.").  And

while this civil action is not rooted in the NVRA, several courts have held that the designation of

"chief election officer" militates in favor of finding Article III standing in various election-law

contexts.  *See OCA-Greater Hous. v. Texas*, 867 F.3d 604, 613–14 (5th Cir. 2017) (finding

Article III standing, noting that the statute at issue applied to every election, and observing that

the Texas Secretary of State was the chief election officer of the state); *Scott v. Schedler*, 771

F.3d 831, 838–39 (5th Cir. 2014) (finding Article III standing and noting the Secretary of State

was the chief election officer under the NVRA); *Voting for Am., Inc. v. Andrade*, 888 F. Supp. 2d

816, 828–29, 832 (S.D. Tex. 2012) (Costa, J.) (denying Secretary's motion to dismiss for lack of

standing and noting that her "argument is at odds with numerous cases in which plaintiffs have

sued secretaries of state when challenging voter registration laws even though states commonly

6

delegate voter registration responsibilities to county officials"), *rev'd on other grounds*, 732 F.3d 382; *see also United States v. Missouri*, 535 F.3d 844, 846 n.1 (8th Cir. 2008) (finding that the Missouri Secretary of State was the proper party to be sued under the NVRA even though enforcement power was delegated to local officials); *Madera v. Detzner*, 325 F. Supp. 3d 1269, 1276 (N.D. Fla. 2018) (noting the Secretary of State was Florida's chief election officer and "[t]his statutory job description is not window dressing"). [3]

Based on these duties, Plaintiffs' injuries are sufficiently traceable to and redressable by Hosemann to establish Article III standing.  While he may not be the only step in disenfranchising a voter, he certainly plays a crucial role in the process.  *Compare K.P. v. LeBlanc*, 627 F.3d 115, 123 (5th Cir. 2010) (finding redressability was met even though the defendant was "far from the sole participant in the application of the challenged statute"), *with Okpalobi*, 244 F.3d at 427 (finding no standing where the state officers did not have "*any duty or ability to do anything*" in connection with the law at issue (emphasis added)).

Likewise, for purposes of Eleventh Amendment immunity, Hosemann has "some connection" with enforcement of section 241, particularly in his role as chief election officer and administrator of SEMS.  *Ex parte Young*, 209 U.S. at 157; *see Mo. Prot. & Advocacy Servs., Inc. v. Carnahan*, 499 F.3d 803, 807 (8th Cir. 2007) (denying immunity in action challenging voter disqualification as "incapacitated" and noting that while local election officials had authority to register voters, the Secretary of State was charged with providing local officials of individuals deemed incapacitated); *Libertarian Party of Ky. v. Grimes*, 164 F. Supp. 3d 945, 950 (E.D. Ky. 2016) (finding *Ex parte Young* exception applied where Secretary of State provided training to

---

[3] Hosemann also serves on the three-person State Board of Election Commissioners alongside the Governor and the Attorney General.  Miss. Code § 23-15-211(1).

county clerks and therefore had "some control over the perpetuation of the ballot access regime the [p]laintiffs challenge[d]").[4]

     C.     Section 253

Section 253 presents a much closer question. It provides: "The Legislature may, by a two-thirds vote of both houses, of all members elected, restore the right of suffrage to any person disqualified by reason of crime; but the reasons therefor shall be spread upon the journals, and the vote shall be by yeas and nays." Miss. Const. art. XII, § 253. The Hopkins Plaintiffs ask the Court to "[i]ssue a class-wide judgment declaring that the inherently arbitrary and racially discriminatory legislative process for the restoration of voting rights established by the suffrage bill provision of the Mississippi Constitution violates the Equal Protection Clause of the Fourteenth Amendment, as well as the First Amendment." Hopkins Compl. [1] at 47.

Hosemann says he has no connection to or role in the restoration process: he is not a member of the legislature, he does not introduce suffrage bills, and he does not vote on such bills. *See* Miss. Const. art. XII, § 253; *see also* Hopkins Compl. [1] at 20 (flow chart detailing restoration process); Hosemann Resp. to Hopkins Interrogs. [63-1] at 53. He therefore denies a causal connection or redressability.

But as noted above, Hosemann is the state's chief election officer and maintains SEMS, which would presumably be involved in one of the final steps in returning a convicted felon to

---

[4] Hosemann relies in part on *McLaughlin v. City of Canton*, where Judge Henry T. Wingate considered criminal disenfranchisement and held that the Secretary of State was "not a proper party." 947 F. Supp. 954, 965 (S.D. Miss. 1995). But that case was decided before Mississippi revised its election laws and designated the Secretary of State as the chief election officer. *See* 2000 Miss. Laws 430 [77-13] (designating the Secretary of State as the chief election officer); 2004 Miss. Laws 305 [77-14] (implementing a statewide centralized voting system).

the voting rolls after he or she successfully files a section 253 petition.  Though somewhat

distinguishable, the Fifth Circuit faced a similar question in *OCA-Greater Houston*, holding:

> unlike in *Okpalobi*, where the defendants had no "enforcement connection with
> the challenged statute," the Texas Secretary of State is the chief election officer of
> the state and is instructed by statute to obtain and maintain uniformity in the
> application, operation, and interpretation of this code and of the election laws
> outside this code.  We are satisfied that OCA has met its burden under *Lujan* to
> show that its injury is fairly traceable to and redressable by the defendants.

867 F.3d at 613–14 (quoting *Okpalobi*, 244 F.3d at 427 n.5) (additional quotation marks and

footnotes omitted).  To be sure, Hosemann's role in section 253 is slight, but he does have

"'some connection with the enforcement of the act' in question."  *Morris v. Livingston*, 739 F.3d

740, 746 (5th Cir. 2014) (quoting *Okpalobi*, 244 F.3d at 414–15).  The Hopkins Plaintiffs have

minimally demonstrated standing and a basis for an *Ex parte Young* claim against Hosemann

challenging section 253.

IV.    Section 241 Merits Analysis

While both the Harness and Hopkins Plaintiffs challenge section 241, they pursue

different theories.  As such, the Court will consider the claims separately.

A.    Harness Plaintiffs

Section 241 was adopted in 1890 and disenfranchised citizens found guilty of "bribery,

burglary, theft, arson, obtaining money or goods under false pretenses, perjury, forgery,

embezzlement[,] [and] bigamy."  Harness Am. Compl. [19] at 5.  The section was amended in

1950 to remove burglary and again in 1968 to add rape and murder as disenfranchising crimes.

*Id.* at 2.  The Harness Plaintiffs take no issue with preventing convicted rapists and murderers

from voting.  *Id.*  But they say disenfranchisement based on the other crimes carried forward

from the 1890 version violates the Fourteenth and Fifteenth Amendments because those crimes

were selected to suppress black voters.  *Id.* at 20.

9

To begin, the United States Supreme Court has expressly held that § 2 of the Fourteenth Amendment affirmatively allows states to deny suffrage to convicted felons. *Richardson v. Ramirez*, 418 U.S. 24, 54 (1974). That does not, however, mean states are free to deny that right for discriminatory reasons. The Supreme Court considered that issue in *Hunter v. Underwood*, where the Court set out a burden-shifting test to determine whether Alabama's felon-disenfranchisement laws violated the Equal Protection Clause. 471 U.S. 222, 227–28 (1985).

Under the *Hunter* test, a plaintiff must show that the law's original enactment was motived by race discrimination and that the law continues to have that effect. *Id.* at 233; *see also id.* at 227–28. If the plaintiff makes those showings, "the burden shifts to the law's defenders to demonstrate that the law would have been enacted without" a racially discriminatory motive. *Id.* at 228.

But *Hunter* left a caveat when it declined to decide "whether [Alabama's disenfranchisement law] would be valid if enacted today without any impermissible motivation . . . ." *Hunter*, 471 U.S. at 233. Based on that language, the Fifth Circuit has held that "substantial, race-neutral alterations in an old unconstitutional law may remove the discriminatory taint." *Veasey v. Abbott*, 888 F.3d 792, 802 (5th Cir. 2018) (citation omitted). And it has applied that rule to section 241.

In *Cotton v. Fordice*, the court observed that Mississippi twice re-enacted section 241 after original adoption:

> Section 241, as enacted in 1890, was amended in 1950, removing "burglary" from the list of disenfranchising crimes. Then, in 1968, the state broadened the provision by adding "murder" and "rape"—crimes historically excluded from the list because they were not considered "black" crimes. Amending § 241 was a deliberative process. Both houses of the state legislature had to approve the amendment by a two-thirds vote. The Mississippi Secretary of State was then required to publish a full-text version of § 241, as revised, at least two weeks before the popular election. *See* Miss. Code Ann. § 4211 (1942); H. Con. Res. 10

(Miss. 1950); H. Con. R. 5 (Miss. 1968).  Finally, a majority of the voters had to
approve the entire provision, including the revision.  Because Mississippi's
procedure resulted both in 1950 and in 1968 in a re-enactment of § 241, each
amendment superseded the previous provision and removed the discriminatory
taint associated with the original version.

157 F.3d 388, 391 (5th Cir. 1998).  The Fifth Circuit concluded that these amendments fell

within the exception *Hunter* "left open," *id.* at 391, and therefore "*Hunter* does not condemn

§ 241," *id.* at 392.

As discussed next, the Harness Plaintiffs urge the Court to ignore *Cotton* because—

according to them—it was based on an incomplete record, was wrongly decided, and has been at

least tacitly overruled by the United States Supreme Court.

        1.      The Record Evidence

According to the Harness Plaintiffs, the *pro se* plaintiffs in *Cotton* were ill-equipped to

create a record regarding the votes in 1950 and 1968, so the Fifth Circuit failed to consider a

complete picture.  Pls.' Mem. [82] at 14.  They suggest, for instance, that the Fifth Circuit did not

see the ballot language in 1950 and 1968.  *Id.*  As a result, Plaintiffs say the court failed to

consider that neither the legislature nor the electorate were allowed to "vote[ ] on whether to

retain or remove the other crimes on the 1890 list.  Thus, the voters in 1950 and 1968 did not

have to approve the entire list of disenfranchising crimes in Section 241 and were not given the

option to do so." *Id.* at 13.

This argument goes only so far.  True enough, the ballot language was not in the *Cotton*

appellate record.  But neither the *Cotton* plaintiffs nor the state mentioned the 1950 and 1968

votes in their appellate briefs.  *See* Pls.' Mem. [75] at 12–13.  Instead, the Fifth Circuit raised

those re-enactments *sua sponte*.  And the only way the Fifth Circuit would have been aware of

the 1950 and 1968 re-enactments is if it researched the legislative history on its own.  Indeed

*Cotton* cites that history.  *See* 157 F.3d at 391.

Substantively, the Fifth Circuit's description of what happened in those years shows that

it read the ballot language Plaintiffs now cite.  In 1950, the ballot removing burglary from the

disenfranchising offenses read as follows:

> Section 241.  Every inhabitant of this state, except idiots, insane persons and Indians not taxed, who is a citizen of the United States of America, twenty-one years old and upwards, who has resided in this state for two years, and one year in the election district, or in the incorporated city or town in which he offers vote, and who is duly registered as provided in this article, and who has never been convicted of bribery, theft, arson, obtaining money or goods under false pretense, perjury, forgery, embezzlement or bigamy, and who has paid on or before the first day of February of the year in which he shall offer to vote, all poll taxes which may have been legally required of him, and which he has had an opportunity of paying according to law, for the two preceding years, and who shall produce to the officers holding the election satisfactory evidence that he has paid such taxes, is declared to be a qualified elector; but any minster of the gospel in charge of an organized church, or his wife legally residing with him, shall be entitled to vote after six months' residence in the election district, incorporated city or town, if otherwise qualified.
>
> Adopted by the House of Representatives, January 26, 1950.
>
> Adopted by the Senate, February 10, 1950.
>
> For Amendment …………………………………………………………..( )
>
> Against Amendment ………………………………………………………...( )

1950 Ballot [74-6] at 1.  Similarly, the 1968 ballot that added rape and murder read, in relevant

part, as follow:

> Section 241.  Every inhabitant of this State, except idiots and insane persons, who is a citizen of the United States of America, twenty-one (21) years old and upwards, who has resided in this State for one (1) year, and for one (1) year in the county in which he offers to vote, and for six (6) months in the election precinct or in the incorporated city of town in which he offers to vote, and who is duly registered as provided in this article, and who has never been convicted of murder, rape, bribery, theft, arson, obtaining money or goods under false pretense, perjury, forgery, embezzlement or bigamy, is declared to be a qualified elector."

12

ADOPTED BY HOUSE OF REPRESENTATIVES:  March 25, 1968.

ADOPTED BY SENATE:  March 25, 1968.

For Amendment …………………………………………………………..(  )

Against Amendment …………………………………………………...(  )

1968 Ballot [74-8] at 1.

This language mirrors the Fifth Circuit's description of the ballots.  As quoted more fully above, the court recognized that "a majority of the voters had to approve *the entire provision, including the revision*."  *Cotton*, 157 F.3d at 391 (emphasis added).  There is simply no hint that the court mistakenly believed voters did anything other than vote up or down on "the entire provision."  *Id.*  Nor does it appear that the court thought voters were asked to "vote[ ] on whether to retain or remove the other crimes on the 1890 list."  Pls.' Mem. [82] at 13.  Finally, the fact that the ballot language did not allow individual votes on the original crimes does not diminish *Cotton*'s conclusion that the final ballot language resulted from "a deliberative process."  *Cotton*, 157 F.3d at 391.

That does not, however, end the analysis because *Cotton* itself contains another caveat.  While the Fifth Circuit found that the 1950 and 1968 amendments removed the racial taint from the 1890 enactment, it noted that the section would remain unconstitutional "if the [1950 and 1968] amendments were adopted out of a desire to discriminate against blacks."  *Id.* at 392.  On this issue, Plaintiffs again say they have created a better record.  Although they offer no direct proof of intent, they circumstantially note the racial demographics in 1950 and 1968; Mississippi's sad history of racial strife, especially around those dates; and other unconstitutional legislation passed in or around those years.  Pls.' Mem. [82] at 16–17.

Although the Fifth Circuit did not mention this well-known history in *Cotton*, the court was persuaded by the fact that both amendments made changes that cut against stereotypical notions about which disqualifying crimes would hinder black votes. *Cotton*, 157 F.3d at 391. The court found those facts sufficient to hold—as a matter of law—that the current version of section 241 comports with equal protection. *Id.* at 392.

The Fifth Circuit has not abandoned that holding. Just last year, the court cited *Cotton* in *Veasey v. Abbott*, a case upholding a Texas voting law. 888 F.3d 792, 802 (5th Cir. 2018). Though he dissented, Judge James E. Graves, Jr., explored *Cotton* in greater depth than the majority opinion, explaining why the 1950 and 1968 votes severed the original racist intent. *Id.* at 821 (Graves, J., dissenting). As he noted, the changes resulted from a "deliberative process"; the votes occurred "sixty and seventy-eight years, respectively, after [section 241] was first enacted"; and the amendments cut against notions of what were "commonly considered to be 'black' crimes." *Id.*

While it is somewhat unusual for an appellate court to raise a factual issue *sua sponte* and then decide it as a matter of law, that is what happened in *Cotton*. The Court will not assume the Fifth Circuit failed to fully consider its holding. As a result, the Harness Plaintiffs are left arguing that *Cotton* got it wrong. But even if it did, "[i]t has been long established that a legally indistinguishable decision of [the Fifth Circuit] must be followed by . . . district courts unless overruled *en banc* or by the United States Supreme Court." *Campbell v. Sonat Offshore Drilling, Inc.*, 979 F.2d 1115, 1121 n.8 (5th Cir. 1992).

2.    Whether *Cotton* Was Overruled

The Fifth Circuit has not overruled *Cotton*, but the Harness Plaintiffs say the Supreme Court abrogated the decision in *Abbott v. Perez*, 138 S. Ct. 2305 (2018). *See* Pl.'s Mem. [75] at

15.  Succinctly stated, they believe the events in 1950 and 1968 failed to remove the

discriminatory intent that existed in 1890 because the votes merely amended section 241 and did

not re-enact it.  *Id.*

In *Perez*, the plaintiffs argued that *Hunter* placed the burden on Texas to prove its interim

redistricting plan was not discriminatory.  The Supreme Court rejected that argument noting that

*Hunter* "addressed a very different situation."  *Perez*, 138 S. Ct. at 2325.  But in doing so, the

Court offered the following synopsis of *Hunter*:

> *Hunter* involved an equal protection challenge to an article of the Alabama
> Constitution adopted in 1901 at a constitutional convention avowedly dedicated to
> the establishment of white supremacy.  The article disenfranchised anyone
> convicted of any crime on a long list that included many minor offenses.  The
> court below found that the article had been adopted with discriminatory intent,
> and this Court accepted that conclusion.  The article was never repealed, but over
> the years, the list of disqualifying offenses had been pruned, and the State argued
> that what remained was facially constitutional.  This Court rejected that argument
> because the *amendments* did not alter the intent with which the article, including
> the parts that remained, had been adopted.  *But the Court specifically declined to
> address the question whether the then-existing version would have been valid if
> "[re]enacted today".*

*Id.* (internal citations omitted) (emphasis added).

From this quote, the Harness Plaintiffs say the Court "drew a distinction between" re-

enactments and "'amendments that did not alter the intent.'"  Pls.' Mem. [75] at 15 (quoting

*Perez*, 138 S. Ct. at 2325).  In other words, mere amendments cannot remove discriminatory

taint, whereas re-enactments may.  And because Plaintiffs describe the 1950 and 1968 votes as

mere amendments rather than re-enactments, *Perez* abrogates *Cotton*.  *Id.*

This argument has two flaws.  First, Mississippians voted for the "entire provision," as

amended, leading the Fifth Circuit to conclude that section 241 was "re-enacted."  *Cotton*, 157

F.3d at 391–92); *see also Veasey*, 888 F.3d at 821 (Graves, J. dissenting).  Second, and more

substantively, when the *Perez* Court summarized *Hunter* and described "amendments" to

15

Alabama's disenfranchisement laws, it was not attempting to distinguish between voluntary amendments and re-enactments because there were no voluntary amendments in *Hunter*. 138 S. Ct. at 2325. Instead, the so-called "amendments" occurred when the offending Alabama statutes were "struck down by the courts." *Hunter*, 471 U.S. at 233. Significantly, *Cotton* references this very distinction when declining to follow *Hunter*. As the Fifth Circuit noted, "the voters of Mississippi willingly broadened [section] 241 through the constitutional amendment process" which made those changes "fundamentally different" from the judicial pruning that occurred in *Hunter*. *Cotton*, 157 F.3d at 391 n.8 (characterizing alterations by judicial process as "'involuntary' amendments"). And because *Perez* does not "directly conflict[ ]" with *Cotton*, *Cotton* still controls at the district-court level. *Alvarez v. City of Brownsville*, 904 F.3d 382, 398 (5th Cir. 2018).

### 3.    The Election Law Reform Task Force

The history of section 241 does not stop in 1968. Even assuming Plaintiffs are correct as to the 1950 and 1968 votes, the state revisited section 241 in the mid-1980s. Starting in 1984, Secretary of State Dick Molpus, a democrat, assembled a bipartisan, biracial Election Law Reform Task Force (the "Task Force") to review and revise the state's election laws. The Task Force included members of the legislature, executive-branch officials, circuit clerks, local election commissioners, and members of the public. Def.'s Evidentiary Submissions [63-2] at 106–07 (outlining purpose); *id.* at 111–13 (listing members). And the Task Force held public hearings throughout the state, met with representatives of the United States Justice Department, and received written feedback from organizations and individuals. *Id.* at 114 (noting plans for public hearings); *id.* at 203 (noting meeting with members of the Voting Rights Section of the U.S. Department of Justice); *id.* at 115–95.

16

Significantly, the Task Force expressly considered criminal disenfranchisement and whether to expand the list of crimes, amend section 241, or leave the law "as is." *Id.* at 212 (Election Law Reform Task Force- Summary of Action).  In the final report, "[i]t was decided that [the] present law dealing with disenfranchisement of electors for the commission of certain crimes should be left as is.  There was discussion as to the need for a constitutional amendment to change the law to include as disenfranchising crimes all felonies." *Id.*

The state legislature responded to the report by forming its own committees, issuing reports, and proposing legislation.  *Id.* at 216–57.  Prior to the 1986 Regular Session, the House committee, in conjunction with its Senate counterpart, issued a formal report, which proposed changes to section 241 and an effectuating constitutional amendment.  *Id.* at 216-51.  Specifically, as to disenfranchisement, the legislative committee recommended:

> 13.  Disenfranchisement of felons
> The committee recommends that any person convicted of any felony in this state, in another state or under federal statute, excluding the crim of manslaughter and felonious violations of the Internal Revenue Code, shall not be permitted to register to vote, or to vote; and if registered the felon's name shall be removed from the registration rolls.  Upon completion of his prison sentence, including any probationary period, the felon will be eligible to register to vote upon presenting to his county registrar certifiable documentation that the sentence has been discharged.

*Id.* at 239–40.

Following the report, legislators introduced 1986 Senate Bill 2234 ("S.B. 2234"), which would have included the recommended language broadening section 241 to all felonies except manslaughter and tax violations.  *Id.* at 255, 257 (Proposed House Amendment to Senate Bill No. 2234).  But those changes did not survive the legislative process and were cut from the bill that passed the 1986 legislative session.  *Id.* at 259–62.  Instead, the legislature adopted the Task Force's recommendation and opted to keep the original list of crimes from section 241 and

amend the Mississippi Code to make it consistent with section 241. *Id.* at 260; *see also* Miss. Code § 23-15-11 (identifying qualified voters as those who have "never been convicted of vote fraud *or of any crime listed in Section 241*, Mississippi Constitution of 1890" (emphasis added)). The legislation passed 118-3 in the House and 51-1 in the Senate. Def.'s Evidentiary Submission [63-2] at 263. It was then precleared by the Department of Justice under Section 5 of the Voting Rights Act.

There is no argument or evidence that either the Task Force or the legislature was tainted with racial animus or by a desire to perpetuate a racially motivated voting scheme. So, according to Hosemann, *if* the burden shifts to him under *Hunter*, he has demonstrated that section 241 "would have been enacted without" racial animus. Def.'s Mem. [64] at 11 (citing *Hunter*, 471 U.S. at 228).

The Harness Plaintiffs say Hosemann has not met that burden for two primary reasons. First, they say the Mississippi legislature merely amended the Mississippi Code "to conform the statute to the Constitution." Pls.' Mem. [82] at 22. In other words, it did not amend the offending constitutional provision, which therefore carries over the discriminatory intent. They also argue that even if the legislature considered amending section 241, there was no statewide vote. *Id*.

But as discussed already, the amendment to the Mississippi Code followed a multi-year, biracial, bipartisan review of Mississippi's election laws that expressly considered criminal disenfranchisement and whether section 241 should be amended. At the end, an overwhelming majority of the legislature decided to leave section 241 alone and instead amend the other election laws to conform with it. This is not a case like *Hunter* where the state itself did nothing to cure the defect, nor was a constitutionally infirm statute "perpetuated into the future by neutral

18

official action." *Kirksey v. Bd. of Sup'rs of Hinds Cty.*, 554 F.2d 139, 148 (5th Cir. 1977). The

unrebutted history shows the state would have passed section 241 as is without racial motivation.

Finally, Plaintiffs cite no authority suggesting that a statewide vote—as opposed to this thorough

representative process—is necessary to remove the racist taint that attached to section 241 more

than 100 years earlier.[5]

For all the reasons stated in this section, Defendant's motion for summary judgment on

the Harness Plaintiffs' section 241 claims is granted.

B.    Hopkins Plaintiffs

The Hopkins Plaintiffs challenge section 241 under the Eighth and Fourteenth

Amendments.

1.    Fourteenth Amendment Equal Protection

Unlike the Harness Plaintiffs, the Hopkins Plaintiffs offer a non-racial approach to their

equal-protection claim. According to them, section 241 cannot survive strict scrutiny under § 1

of the Fourteenth Amendment because it is "not narrowly drawn to address a compelling state

interest using the least drastic means." Pls.' Mem. [73] at 38 (citing *Dunn v. Blumstein*, 405 U.S.

330, 337, 342–43 (1972)).

The plaintiffs in *Richardson v. Ramirez* said the same thing. 418 U.S. at 27. There, three

convicted felons alleged that California's constitution—which "disenfranchised persons

convicted of an 'infamous crime'"—failed the strict-scrutiny test and therefore violated § 1's

---

[5] Hosemann does not directly argue that these facts implicate the *Cotton* analysis, but perhaps he
should have. *Cotton* was based on the observation in *Hunter* that the Court did not consider
whether the law would be valid "if enacted today without any impermissible motivation."
*Hunter*, 471 U.S. at 233. In this case, Mississippi voted to keep section 241 as is and codified
the implementing statutes to conform with it. Thus, "[t]he passage of time and the actions of
intervening parties [appears to have] cut that thread of [racist] intent." *Veasey*, 888 F.3d at 821
(Graves, J., dissenting).

equal-protection guarantee.  *Id.*  The Supreme Court of California agreed, *id.* at 33–34, but the United States Supreme Court reversed.  As the high Court noted, § 2 of the Fourteenth Amendment acknowledges a state's right to exclude convicted felons from the franchise, *id.* at 55–56.

Section 2 provides a penalty when a state denies or abridges the right to vote.  Edited for clarity, the section provides:

> Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State . . . .  But when the right to vote at any election . . . is denied to any of the male inhabitants of such State . . . , or in any way abridged, *except for participation in rebellion, or other crime,* the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State.

U.S. Const. amend. XIV, § 2 (emphasis added).  The *Richardson* Court held that because § 2 "affirmative[ly] sanction[ed]" a state's right to deny the franchise based on a criminal conviction, doing so cannot violate § 1 of that same amendment.  418 U.S. at 54.

Plaintiffs know *Richardson* is a problem and try to distinguish it by offering a different construction of § 2.  According to them, the phrase "other crime" in § 2 modifies only the word "abridged" and not the word "denied."  Pls.' Mem. [73] at 28.  So construed, § 2 would recognize a state's right to *abridge* the voting rights of someone who commits a crime—i.e., temporarily disenfranchise that person—but not the right to permanently *deny* the franchise.  *Id.*  Thus, Plaintiffs say strict scrutiny applies to laws—like Mississippi's section 241—that *deny* the franchise based on a criminal conviction.

Plaintiffs insist that *Richardson* is not binding because the Court never considered their textual argument.  But even assuming the Supreme Court overlooked this alternative construction, its holding is squarely on point.  "[T]he specific holding of the Court was that a

state may deny the franchise to that group of 'convicted felons who have completed their sentences and paroles.'" *Shepherd v. Trevino*, 575 F.2d 1110, 1114 (5th Cir. 1978) (quoting *Richardson*, 418 U.S. at 56).

That holding remains binding. And as the Fifth Circuit stated in *Cotton*, "Section 2 of the Fourteenth Amendment does not prohibit states from disenfranchising convicted felons." 157 F.3d at 391 (citing *Richardson*, 418 U.S. at 24, 54). Other circuits have reached the same conclusion. *See Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018) (citing *Richardson* and stating "it is well established that Section 2 of the Fourteenth Amendment gives states the 'affirmative sanction' to exclude felons from the franchise"); *Hand v. Scott*, 888 F.3d 1206, 1209 (11th Cir. 2018) (noting the Supreme Court "has held that 'the exclusion of felons from the vote has an affirmative sanction in § 2 of the Fourteenth Amendment'" (quoting *Richardson*, 418 U.S. at 54)); *Hayden v. Pataki*, 449 F.3d 305, 315 (2d Cir. 2006) ("The Supreme Court has ruled that, as a result of [§ 2], felon disenfranchisement provisions are presumptively constitutional."); *Johnson v. Governor of State of Fla.*, 405 F.3d 1214, 1225 (11th Cir. 2005) (listing cases, including *Richardson*, recognizing "the propriety of excluding felons from the franchise"); *Harvey v. Brewer*, 605 F.3d 1067, 1079 (9th Cir. 2010) ("That is, once a felon is properly disenfranchised a state is at liberty to keep him in that status indefinitely and never revisit that determination." (citing *Richardson*, 418 U.S. at 26–27)). Based on *Richardson* and *Cotton*, the Court must reject Plaintiffs' argument.[6]

---

[6] Plaintiffs apparently anticipated this holding. *See* Pls.' Mem. [73] at 43 (stating that if Court finds *Richardson* applicable, "Plaintiffs present these arguments to preserve the issue for appeal").

2.    Eighth Amendment Cruel and Unusual Punishment

The Hopkins Plaintiffs also say section 241 violates the Eighth Amendment's prohibition against cruel and unusual punishment.  While they offer a detailed analysis under that amendment, their argument again conflicts with § 2 of the Fourteenth Amendment.  Simply put, it would be internally inconsistent for the Eighth Amendment to prohibit criminal disenfranchisement while § 2 of the Fourteenth Amendment permits it.  As aptly stated by the district court in *Farrakhan v. Locke*,

> Plaintiffs also claim that Washington's felon disenfranchisement law violates free speech, double jeopardy and the prohibition of cruel and unusual punishment under the First, Fifth, and Eighth Amendments to the Constitution.  In order to uphold these claims against Defendants' motion to dismiss, the Court would have to conclude that the same Constitution that recognizes felon disenfranchisement under § 2 of the Fourteenth Amendment also prohibits disenfranchisement under other amendments.  The Court is not inclined to interpret the Constitution in this internally inconsistent manner or to determine that the Supreme Court's declaration of the facial validity of felon disenfranchisement laws in *Richardson v. Ramirez* was based only on the fortuity that the plaintiffs therein did not make their arguments under different sections of the Constitution.  While discussing the precedent leading up to its decision in *Richardson*, the Court wrote that "recently we have strongly suggested in dicta that exclusion of convicted felons from the franchise violates no constitutional provision."  *Richardson*, 418 U.S. at 53, 94 S. Ct. at 2670.  This language in *Richardson* suggests that the facial validity of felon disenfranchisement may be absolute.  The Court concurs with this application to the case at hand.

987 F. Supp. 1304, 1314 (E.D. Wash. 1997).  Summary judgment is appropriate as to the Hopkins Plaintiffs' Eight Amendment claim.[7]

---

[7] In *Graham v. Connor*, the United States Supreme Court held that claims related to search-and-seizure violations fall under the Fourth Amendment rather than the substantive-due-process provisions found in the Fourteenth Amendment.  490 U.S. 386, 395 (1989).  It did so because "the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct," whereas the Fourteenth Amendment addressed "the more generalized notion of 'substantive due process.'"  *Id.*  In a similar sense, § 2 of the Fourteenth Amendment "affirmative[ly] sanction[s]" a state's right to deny the franchise based on a criminal conviction whereas the Eight Amendment does not mention voting rights. *Richardson*, 418 U.S. at 54.

V.      Section 253

As noted earlier, section 253 provides a legislative process by which a convicted felon can regain the right to vote.  Under that provision, "[t]he Legislature may, by a two-thirds vote of both houses, of all members elected, restore the right of suffrage to any person disqualified by reason of crime."  Miss. Const. art. XII, § 253.

The Hopkins Plaintiffs make three primary arguments for invalidating section 253:  (1) it violates the First Amendment because legislators have unfettered discretion to prevent speech; (2) it violates equal protection because it includes no objective standards for determining who is entitled to relief; and (3) it was adopted for racist reasons and therefore violates equal protection as proscribed in *Hunter*.  The Court will address each argument.

A.      First Amendment

"[T]he First Amendment provides no greater protection for voting rights than is otherwise found in the Fourteenth Amendment."  *Hand*, 888 F.3d at 1211; *see also id.* at 1212 ("Every First Amendment challenge to a discretionary vote-restoration regime we've found has been summarily rebuffed.").  The Court therefore dismisses the First Amendment claim.[8]

---

[8] Plaintiffs cite *Hand* to support their First Amendment claim, asserting "[t]he Eleventh Circuit expressly recognized that 'a discretionary felon-reenfranchisement scheme that was facially or intentionally designed to discriminate . . . might violate the First Amendment.'" Pls.' Mem. [78] at 18 (quoting *Hand*, 888 F.3d at 1211–12).  But what Plaintiffs left out of that sentence makes all the difference.  The court was addressing schemes "designed to discriminate *based on viewpoint—say, for example, by barring Democrats*." *Hand*, 888 F.3d at 1211 (emphasis added to language deleted from Plaintiffs' memorandum).  Plaintiffs' use of an ellipses is at best suspect, and they never acknowledge that the *Hand* court rejected their argument.  While *Hand* is not binding, it is persuasive.

B.    Arbitrary Re-enfranchisement

Plaintiffs are correct that section 253 provides no "objective standards." Pls.' Mem. [73] at 44. Instead, the provision allows the legislature to consider petitions on a case-by-case basis, which Plaintiffs attack on two grounds. First, they say "the Fifth Circuit has twice instructed that arbitrary disenfranchisement or re-enfranchisement of individuals convicted of disenfranchising offenses violates the Equal Protection Clause." Pls.' Mem. [73] at 43–44 (citing *Williams v. Taylor*, 677 F.2d 510 (5th Cir. 1982); *Shepherd*, 575 F.2d 1110). But neither case actually addresses Plaintiffs' argument that standardless re-enfranchisement laws violate equal protection.

In *Shepherd v. Trevino*, the Fifth Circuit reviewed and upheld a Texas law that provided "for the reenfranchisement of convicted state felons who satisfactorily complete the terms of their probation without providing a similar mechanism for the reenfranchisement of successful federal probationers." 575 F.2d at 1111. In doing so, the court made the unremarkable observation that re-enfranchisement laws may not discriminate based on race by, for example, "disenfranchis[ing] all felons and then reenfranchis[ing] only those who are, say, white. Nor can we believe that [§] 2 would permit a state to make a completely arbitrary distinction between groups of felons with respect to the right to vote." *Id.* at 1114. But *Shepherd* did not address standardless re-enfranchisement mechanisms as Plaintiffs suggest. *See* Pl.'s Mem. [73] at 44. Indeed the mechanism it approved gave courts discretion when restoring voting rights. *Shepherd*, 575 F.2d at 1115.

*Williams v. Taylor* is no better. There, a black voter challenged his disenfranchisement based on a prior conviction because white voters had not been disenfranchised. 677 F.2d at 514. To begin with, *Williams* was not a re-enfranchisement case. Nevertheless, Plaintiffs note that the court reversed summary judgment and allowed the plaintiff the "chance to prove his claim of

selective and arbitrary enforcement of the disenfranchisement procedure." *Id.* at 517.  In doing

so, the Fifth Circuit held that the plaintiff had no right to vote, but that he did have "the right not

to be the arbitrary target of the Board's enforcement of the statute." *Id.* at 517.  As in *Shepherd*,

the case asked whether the plaintiff had been treated differently, not whether the law violated

equal protection for lack of objective standards.

      Plaintiffs' second argument likewise misses the mark.  They say "[t]he Supreme Court

has repeatedly struck down voter eligibility-related laws that are as 'completely devoid of

standards and restraints' as Mississippi's suffrage restoration provision."  Pls.' Mem. [73] at 44.

But they support that statement by citing only disenfranchisement cases, and there is a

substantive difference.   As the Supreme Court has noted, re-enfranchisement does not remove a

protected interest but is instead a matter of clemency.  *See, e.g.*, *Conn. Bd. of Pardons v.

Dumschat*, 452 U.S. 458, 465 (1981).

      In the re-enfranchisement context, *Hand* is again helpful.  There, the plaintiff disputed the

lack of standards for pardon petitions on equal-protection grounds.  888 F.3d at 1208.  But the

Eleventh Circuit concluded that the Supreme Court foreclosed the argument in *Beacham v.

Braterman*, 300 F. Supp. 182 (S.D. Fla. 1969), *aff'd* 396 U.S. 12 (1969).  The *Hand* court also

noted "[o]ther precedents confirm[ing] the broad discretion of the executive to grant and deny

clemency," often with "unfettered discretion."  888 F.3d at 1209 (collecting cases).  The Hopkins

Plaintiffs understandably observe that these cases deal with the executive branch—though

*Shepherd* dealt with similar discretion vested in the judicial branch.  575 F.2d at 1113.  But

Plaintiffs have not demonstrated that the legislative branch should be treated any differently.

      Plaintiffs have also failed to satisfy their burden under the rational-basis test.  *See

Shepherd*, 575 F.2d at 1115.  Plaintiffs say in their response to Hosemann's motion that the

Secretary of State has not shown section 253 is rationally related to a legitimate governmental interest. Pls.' Mem. [78] at 46. To begin with, it is not enough for Plaintiffs to say the state failed to demonstrate a rational basis when it is Plaintiffs' burden to make that showing. *Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338, 350 (5th Cir. 2013). Substantively, "[a] state properly has an interest in excluding from the franchise persons who have manifested a fundamental antipathy to the criminal laws of the state or of the nation by violating those laws sufficiently important to be classed as felonies." *Shepherd*, 575 F.2d at 1115. And Plaintiffs offered no reply when Hosemann demonstrated that section 253 is rationally related to this legitimate governmental interest. *See* Def.'s Mem. [80] at 38.

In sum, Plaintiffs' authority does not address standardless re-enfranchisement mechanisms under an equal-protection analysis, and they have otherwise failed to meet their burden under the rational-basis test. Plaintiffs' cited authority does, however, address equal protection where a re-enfranchisement law is allegedly applied in a discriminatory way. *See Shepherd*, 575 F.2d at 1115. And that issue folds into Plaintiffs' *Hunter* argument—whether section 253 was adopted with the intent to discriminate and has that effect. *Hunter*, 471 U.S. at 227.

C.    *Hunter* Analysis

The parties dispute whether the Hopkins Plaintiffs presented sufficient record evidence of (1) discriminatory intent in 1890 and (2) racial impact—the first two prongs of the *Hunter* burden-shifting analysis. Unlike the section 241 analysis under *Cotton*, there is no Fifth Circuit authority dictating the result of this claim. Moreover, both parties submit record evidence regarding Plaintiffs' required showing. That evidence must be viewed in the light most

26

favorable to the non-movant on each cross motion, which produces questions of fact on whether Plaintiffs met their burden under *Hunter*.

That said, Hosemann also argues that the Task Force and legislative processes in the mid-1980s satisfy the third prong of the *Hunter* analysis as to section 253. Unlike section 241, the legislature did not pass any laws that impacted section 253. Re-enfranchisement was, however, considered. Primarily, both the House and Senate committees jointly recommended eliminating section 253 and allowing convicted felons to regain the right to vote after completing their sentences and probation. *See* Def.'s Evidentiary Submissions [63-2] at 239–41 (Election Law Reform Study Committee Recommendations). But by the time S.B. 2234 was filed, that recommendation was absent. *Id.* at 255 (Proposed House Amendment to Senate Bill No. 2334). The Court could not find in this record what happened to the suggested amendment or whether it was ever voted on by either chamber.

Hosemann does not suggest that these facts trigger the *Cotton* analysis. As for *Hunter*, the Hopkins Plaintiffs say that absent re-enactment, the Court must limit its review to what happened in 1890. Even assuming the evidence from the 1980s impacts Hosemann's final burden under *Hunter*, the record is not sufficient to hold—as a matter of law—that either party is entitled summary judgment on that factual issue. Moreover, both parties offer conflicting evidence as to the intent in 1890. Again, the evidence is viewed in the light most favorable to the non-movant, which precludes summary judgment as to original intent for enacting section 253.

VI.     Conclusion

        The parties presented extensive briefing.  And while not all arguments are reflected in this Order, all arguments raised were considered.  Those not addressed would not have changed the outcome.

        With respect to section 241, this Court is bound by the precedent set by the United States Supreme Court in *Richardson v. Ramirez* and the Fifth Circuit Court of Appeals in *Cotton v. Fordice*.  For that and the other stated reasons, Defendant's motion for summary judgment [63] as to the Harness Plaintiffs is granted; the Harness Plaintiffs' summary-judgment motion [74] is denied; and the Harness Complaint is severed and dismissed.  A separate judgment will be entered in the severed Harness case in accordance with Federal Rule of Civil Procedure 58.  Defendant's motion for summary judgment [66] as to the Hopkins Plaintiffs is granted in part and denied in part—granted as to section 241 and denied as to section 253; and the Hopkins Plaintiffs' motion for summary judgment [74] is denied as to both sections 241 and 253.

        Finally, the court certifies all holdings in the still open Hopkins case for interlocutory appeal.   The Court believes this order involves several controlling questions of law as to which there is substantial ground for difference of opinion.  *See* 28 U.S.C. § 1292.  Moreover, an immediate appeal from the order may materially advance the ultimate termination of the litigation.  *Id.*  As noted, the Harness and Hopkins plaintiffs made different arguments as to section 241, and if the Harness Plaintiffs appeal, then the Fifth Circuit should consider the Hopkins Plaintiffs' legal-construction arguments at the same time.  Regarding section 253, Hosemann may elect to appeal the standing holding and the holding regarding the implications of the 1986 committee reports recommending deletion of section 253.  Likewise, plaintiffs may wish to appeal the holding that their claim raises no recognized equal-protection rights.  Any one

28

of these or the other issues would materially impact the trial of this matter, and the Court also wishes to avoid piecemeal appeals.  For these reasons, all issues are certified.

Finally, the Court anticipates an appeal and therefore stays the Hopkins case until the appeal is concluded or the parties indicate that no appeal will be filed and request pre-trial conference.

**SO ORDERED AND ADJUDGED** this the 7th day of August, 2019.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**DENNIS HOPKINS, ET AL.**                                         **PLAINTIFFS**

**V.**                                 **CIVIL ACTION NO. 3:18cv188-DPJ-FKB**

**SECRETARY OF STATE DELBERT HOSEMANN,**
**in his official capacity**                                    **DEFENDANT**

---

### NOTICE OF APPEAL

---

Defendant Secretary of State Delbert Hosemann, in his official capacity, acting

pursuant to Rule 3 of the Federal Rules of Appellate Procedure, hereby appeals this

Court's August 7, 2019 order, [Dkt. 21; Dkt. 91, No. 3:17cv791-DPJ-FKB[1]], denying

Secretary Hosemann summary judgment on Eleventh Amendment immunity, and other

jurisdictional grounds, to the United States Court of Appeals for the Fifth Circuit.

Jurisdiction of this appeal from the denial of Secretary Hosemann's claim of Eleventh

Amendment immunity, and related subject-matter jurisdictional issues, is proper

pursuant to the collateral order doctrine. *E.g.*, ***Keyes v. Gunn***, 890 F.3d 232, 235 n.4

(5th Cir. 2018); ***Bryant v. Texas Department of Aging and Disability Services***,

781 F.3d 764, 768 (5th Cir. 2015).[2]

---

[1] The August 7, 2019 order was initially docketed in Civil Action No. 3:17cv791-DPJ-FKB, and this case was consolidated with No. 3:17cv791-DPJ-FKB for all purposes prior to entry of the order. Due to the consolidation, the record on appeal should include all docket entries filed on or before August 7, 2019 in No. 3:17cv791-DPJ-FKB.

[2] Secretary Hosemann and the plaintiffs have each filed petitions seeking interlocutory appeal from this Court's August 7, 2019 order pursuant 28 U.S.C. § 1292(b). Those petitions are currently pending before the United States Court of Appeals for the Fifth Circuit and assigned Fifth Circuit Cause No. 19-00024. Should the Fifth Circuit grant an interlocutory appeal from the August 7 order pursuant to § 1292(b), this appeal authorized by the collateral order doctrine should be consolidated and merged with it.

THIS the 3rd day of September, 2019.

Respectfully submitted,

DELBERT HOSEMANN,
SECRETARY OF STATE OF MISSISSIPPI

BY:   JIM HOOD, ATTORNEY GENERAL

By:   Justin L. Matheny (Bar No. 100754)
Krissy C. Nobile (Bar No. 103577)
Office of the Attorney General
P.O. Box 220
Jackson, MS 39205
Telephone: (601) 359-3680
Facsimile: (601) 359-2003
*jmath@ago.state.ms.us*
*knobi@ago.state.ms.us*

*Counsel for Defendant Secretary of State
Delbert Hosemann, in his official capacity*

# EXHIBIT C

# Mississippi Voter Information Guide

*Know your voting rights and responsibilities*



401 Mississippi Street
P.O. Box 136
Jackson, MS 39205
Elections Hotline: 1 (800) 829-6786
www.yallvote.sos.ms.gov

## 2018-2020 Elections Calendar

The chart below reflects regularly scheduled elections and does not account for special elections, elections affected by litigation, and other special circumstances.

| | 2018 | 2019 | 2020 | 2021 |
|---|---|---|---|---|
| **Federal Offices** | | | | |
| President and Vice President | | | X | |
| United States Senator | X | | X | |
| United States Representative | X | | X | |
| **State Offices** | | | | |
| Governor | | X | | |
| Lieutenant Governor | | X | | |
| Secretary of State | | X | | |
| Attorney General | | X | | |
| State Auditor | | X | | |
| State Treasurer | | X | | |
| Commissioner of Insurance | | X | | |
| Commissioner of Agric. & Commerce | | X | | |
| State Senator | | X | | |
| State Representative | | X | | |
| Transportation Commissioner | | X | | |
| Public Service Commissioner | | X | | |
| **State District Offices** | | | | |
| Supreme Court Justice | X | | X | |
| Court of Appeals Judge | X | | X | |
| Circuit Court Judge | | X | | |
| Chancery Court Judge | | X | | |
| District Attorney | | X | | |
| Levee Commissioner | | X | | |
| **County Offices** | | | | |
| Sheriff | | X | | |
| Chancery Clerk | | X | | |
| Circuit Clerk | | X | | |
| County Court Judge | | X | | |
| Tax Assessor | | X | | |
| Tax Collector | | X | | |
| Coroner | | X | | |
| Superintendent of Education | | X | | |
| County Attorney | | X | | |
| Surveyor | | X | | |
| **County District Offices** | | | | |
| Supervisor | | X | | |
| Justice Court Judge | | X | | |
| Constable | | X | | |
| Election Commissioner | | X | | |
| **Municipal Offices** | | | | X |

*NOTE: Not all counties elect all of the offices listed. Some special-charter municipalities hold elections in years other than the one indicated. Supreme Court Justices, Appeals Court Judges, and County Board of Education members run in staggered terms.*

## Voting with Photo ID

All Mississippi voters casting a ballot in person at the polls or casting an absentee ballot in the Circuit or Municipal Clerk's Office must present one of the following forms of acceptable photo ID:

- A driver's license;
- A government issued photo ID card;
- A United States passport;
- A government employee photo identification card;
- A firearms license;
- A student photo ID issued by an accredited Mississippi university, college, or community/junior college;
- A United States military photo ID;
- A tribal photo ID;
- Any other photo ID issued by any branch, department, agency or entity of the United States government or any State government; or
- A Mississippi Voter Identification Card

If you do not present an acceptable form of photo ID or are unable to do so because of a religious objection, you are entitled to cast an affidavit ballot.

A voter casting an affidavit ballot because he/she did not present an acceptable form of photo ID based upon a religious objection may not have his/her ballot rejected for this reason if he/she completes an Affidavit of Religious Objection in the Circuit or Municipal Clerk's Office within five business days after Election Day.

A voter casting an affidavit ballot because he/she did not present an acceptable form of photo ID may not have his/her ballot rejected for this reason if he/she presents an acceptable form of photo ID in the Circuit or Municipal Clerk's Office within five business days after Election Day.

**Call 1 (844) MSVoter (1 (844) 678-6837) for Voter ID information or assistance in obtaining a Mississippi Voter Identification Card.**

## Voting by Absentee Ballot

Some registered voters are eligible to vote by an absentee ballot because of age, health, work demands, temporary relocation for educational purposes, or their affiliation with the U.S. Armed Forces. Please check with your Circuit or Municipal Clerk to determine if you are entitled to vote by an absentee ballot and to learn the procedures for doing so.

If you know how you will vote by an absentee ballot, you may contact your Circuit or Municipal Clerk's Office at any time within 45 days of the election.

Voters included within the Uniform and Overseas Citizens Absentee Voting Act (UOCAVA), such as members of the military and overseas citizens, may register to vote and request an absentee ballot by Federal Post Card Application (FPCA). UOCAVA voters may register to vote using the FPCA up until ten days before the date of an election and may receive and return an absentee ballot by mail, email, or fax. For more information, call the Secretary of State's Election Hotline at 1 (800) 829-6786 or visit our website at www.yallvote.sos.ms.gov.

# How to Register to Vote

## Registration Qualifications

Every U.S. citizen who possesses the following qualifications is eligible to register to vote in Mississippi:

- A resident of Mississippi and the county, city, or town for 30 days prior to the election;
- At least 18 years old (or will be 18 by the date of the next General Election);
- Not declared mentally incompetent by a court; and
- Not convicted of a disenfranchising crime as defined by Section 241 of the Mississippi Constitution or by Attorney General Opinion, unless pardoned, rights of citizenship restored by the Governor or suffrage rights restored by the Legislature.

## Registering by Mail

1. Complete a Mail-In Voter Registration Application. Provide the information requested, including your driver's license number and/or the last four digits of your driver's license number or the last four digits of your Social Security number, you must send with your application:
   - A copy of a current and valid photo ID; **or**
   - A copy of a current utility bill, bank statement, government check, paycheck, or other government document that shows your name and address.
2. Send your Mail-In Voter Registration Application to the Circuit Clerk's Office located in the county of your residence.
3. Applications must be postmarked 30 days before the date of the election. If the 30th day falls on a Sunday or legal holiday, then both the postmark and in-person deadline is extended to the next regular business day.
4. Mail-In Registration Applications are available at your Circuit Clerk's Office, Municipal Clerk's Office, public library, and other participating government offices. Also, Mail-In Registration Applications may be downloaded from our website at www.yallvote.sos.ms.gov.

## Registering in Person

1. You may register to vote in person at any of the following locations:
   - Circuit Clerk's Office;
   - Municipal Clerk's Office;
   - Department of Public Safety; or
   - Any state or federal agency offering government services, such as the Department of Human Services.
2. You must register to vote 30 days before the date of the election. If the 30th day falls on a Sunday or legal holiday, then both the postmark and in-person deadline is extended to the next regular business day.

## Know Your Voting Rights

- Every qualified Mississippi elector is entitled to vote regardless of race, creed, color, or disability.
- No one may refuse a person the right to vote if that person is legally entitled to vote.
- No voter shall be threatened, intimidated, or paid to vote by any person.
- Voters whose names do not appear on the poll book or who do not have an acceptable form of photo ID are entitled to vote by affidavit ballot.
- Voters who cast an affidavit ballot are entitled to receive written information at the time of voting on how to determine if the vote was counted and, if not, why not.
- Voters who require assistance in marking the ballot because of disability, blindness, or an inability to read or write are entitled to receive assistance from a person of the voter's choice, excluding, a candidate whose name is on the ballot, or the spouse, parent, sibling or child of a candidate whose name is on the ballot, or by a poll watcher who is observing in the polling place on Election Day, or the voter's employer or agent of that employer, or officer or agent of the voter's union; unless, however, a candidate for office or the spouse, parent or child of a candidate is related within the first degree to the voter requesting assistance.

# Voter Registration Deadlines

To vote, you must register either in person at the Circuit Clerk's or Municipal Clerk's Office or by mail-in registration application at least 30 days prior to the date of the election. All applications must be postmarked on or before 30 days prior to the date of the election. If the 30th day falls on a Sunday or legal holiday, then both the postmark and in-person deadline is extended to the next regular business day.

Voters who have not yet reached the age of 18 at the time of a primary election may vote in the primary election so long as he/she will reach the age of 18 on before the date of the general election.

## 2018

**Primary Election Day - June 5**
*Register by May 7*

**General Election Day - November 6**
*Register in person by October 8*
*Voter Registration Applications sent by mail must be postmarked no later than October 9*

## 2019

**Primary Election Date - August 6**
*Register by July 8*

**General Election Date - November 5**
*Register by October 7*

## 2020

**Primary Election Day - March 10**
*Register by February 10*

**General Election Day - November 3**
*Register by October 5*

## 2021

**Primary Election Date - April 6**
*Register by March 8*

**General Election Date - June 8**
*Register by May 10*

# www.YallVote.sos.ms.gov

## Are you registered to vote?

Verify if you are an active registered voter online at www.yallvote.sos.ms.gov.

## Have you moved and need to update your address?

To update your name and address registration information online, you must already be a registered voter of the State of Mississippi and have a current and valid Mississippi driver's license or photo identification card issued by the Mississippi Department of Public Safety.

Update your voter registration information in five easy steps:

1. Enter your information exactly as it appears on your current voter registration card.
2. Choose your name out of the four possibilities listed.
3. Enter your information exactly as it appears on your driver's license or other DPS identification card.
4. Change your address or name.
5. Visit the polling place locator prior to or on Election Day to determine where you should go to cast your ballot.

# www.yallvote.sos.ms.gov

## Where to Vote

After registering to vote, your Voter Registration Card will be sent to your residence/mailing address provided on your application. Your Voter Registration Card will provide the name, location, and number of the precinct in which you will vote.

You may contact your Circuit Clerk's Office for more information. Polls are open each Election Day from 7 a.m. until 7 p.m.

# EXHIBIT D

# *United States Court of Appeals*

### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

April 16, 2019

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

    No. 19-60133   Joseph Thomas, et al v. Phil Bryant, et al
                 USDC No. 3:18-CV-441

Enclosed is an order entered in this case.

                 Sincerely,

                 LYLE W. CAYCE, Clerk

                 By: _____
                 Allison G. Lopez, Deputy Clerk
                 504-310-7702

Mr. Brian Parker Berry
Mr. Tommie S. Cardin
Mr. Charles Edward Cowan
Mr. Jon Marshall Greenbaum
Mr. Robert Bruce McDuff
Mr. T. Russell Nobile
Mrs. Beth Levine Orlansky
Mr. Joseph Henry Ros
Ms. Caitlyn E. Silhan
Mr. Ellis Turnage
Mr. Michael Brunson Wallace

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

————————————

No. 19-60133

————————————

JOSEPH THOMAS; VERNON AYERS; MELVIN LAWSON,

        Plaintiffs - Appellees

v.

PHIL BRYANT, Governor of the State of Mississippi, all in the official
capacities of their own offices and in their official capacities as members of
the State Board of Election Commissioners; DELBERT HOSEMANN,
Secretary of State of the State of Mississippi, all in the official capacities of
their own offices and in their official capacities as members of the State
Board of Election Commissioners,

        Defendants - Appellants

————————————————

Appeal from the United States District Court
for the Southern District of Mississippi

————————————————

O R D E R :

    IT IS ORDERED that appellants' motion to expedite the appeal is

GRANTED as to the request to expedite. Per their proposal, Appellants' Brief

is due April 18. Appellees' Brief is due May 6. Appellants' Reply is due May

13. The case will be scheduled for oral argument the week of June 10, which

is the first panel argument session after Appellants' proposed briefing

deadlines (Appellants did not file a request for expedited appeal until more than three weeks after the stay order and more than two weeks after the stay opinion issued).  The separate motion for initial en banc review will be directed to the assigned oral argument panel for consideration.

_____
GREGG J. COSTA
UNITED STATES CIRCUIT JUDGE